# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

CHRIS G.,[1]

      Plaintiff,

v.

FRANK BISIGANO,[2]
Commissioner of Social Security,

      Defendant.

CIVIL NO. 1:23-CV-02022

(Magistrate Judge Latella)

## **MEMORANDUM OPINION**

This is an action brought under Section 1383(c) of the Social

Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final

decision of the Commissioner of Social Security (hereinafter, "the

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial. *See Tammy H. v. Frank Bisignano*, Commissioner of Social Security, No. 1:24-cv-00838, Docket No. 19 at n.1 (M.D. Pa. Aug. 27, 2025).

[2] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. He has been automatically substituted in place of the original defendant, Kilolo Kijakazi. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

Commissioner") denying Plaintiff Chris G.'s ("Mr. G.") claims for a period of disability and supplemental security income ("SSI") and disability insurance benefits ("DIB") under Titles II and XVI of the Social Security Act. (Doc. 1). For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision will be vacated and remanded.

## I.    Background and Procedural History

On June 1, Mr. G. filed an application for Disability Insurance Benefits under Title II benefits. (Doc. 10-5 at 5)[3]. He filed an application for Title XVI supplemental security income on June 29, 2021. (Doc. 10-5 at 9). In both applications, he alleged an onset date of December 31, 2018. (Doc. 10-5 at 5, 9). The Social Security Administration initially denied Mr. G.'s claims on November 2, 2021, and again on reconsideration on June 1, 2022. (Doc. 10-3 at 96-97, 72-95). Mr. G. requested a hearing before an Administrative Law Judge

---

[3] For the sake of clarity, we refer, in all instances, to the ECF document numbers and pagination in the upper right-hand corner of each page.

("ALJ") on and on October 27, 2022, ALJ Therese Hardiman conducted the requested hearing.  (Doc. 10-2 at 38).

In a written opinion dated November 25, 2022, the ALJ determined that Mr. G. is not disabled and therefore not entitled to the benefits sought.  (Doc. 10-2 at 37).  Mr. G. appealed the ALJ's decision to the Appeals Council, which, on October 17, 2023, denied his request for review.  (Doc. 10-2 at 2).  On December 6, 2023, Mr. G. filed the instant action.  (Doc. 1).  The parties consented to have a magistrate judge conduct all proceedings in this matter on December 8, 2023.  (Doc. 7).[4]  The Commissioner responded on January 26, 2024, filing an Answer (Doc. 8) and providing the requisite transcripts from the disability proceedings on October 27, 2022 (Docs. 9, 10).  The parties then filed their respective briefs (Docs. 11, 17, 18), with Mr. G alleging four errors warranting reversal or remand.  (Doc. 11 at 7).

---

[4] On June 13, 2025, we issued an Order providing the parties with notice of our intent to continue to exercise the jurisdiction previously consented to by the parties absent any express objection.  (Doc. 20).  No such objections were filed.

## II.   The ALJ's Decision

In a decision dated November 25, 2022, the ALJ determined Mr. G. "has not been under a disability, as defined in the Social Security Act, from December 31, 2018, through the date of this decision."  (Doc. 10-2 at 36).  The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. §§ 404.1520; 416.920.  The ALJ determined that Mr. G. met the insured status requirements of the Social Security Act through September 30, 2021.  (Doc. 10-2 at 21).

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA").  20 C.F.R §§ 404.1520(a)(4)(i); 416.920(a)(4)(i).  If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience.  20 C.F.R. § 404.1520(b); 416.902(b).  SGA is defined as work activity—requiring significant physical or mental activity— resulting in pay or profit.  20 C.F.R. §§ 404.1572; 416.972.  In making this determination, the ALJ must consider only the earnings of the claimant.  20 C.F.R. §§ 404.1574; 416.974.  The ALJ determined Mr. G. "has not engaged in [SGA] since December 31, 2018, the alleged onset

4

date." (Doc. 10-2 at 21). Thus, the ALJ's analysis proceeded to step two.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore, not disabled." 20 C.F.R. §§ 404.1520(c); 416.920(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step.

The ALJ found Mr. G. has the following severe impairments: degenerative disc and joint disease of the lumbar spine; schizoaffective disorder; generalized anxiety disorder (GAD); and bipolar disorder. (Doc. 10-2 at 21).

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in 20 C.F.R. Part 404, Subpt. P, App.

1 (20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526; 416.920(d)).  If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled.  20 C.F.R. § 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  The ALJ determined that none of Mr. G.'s impairments, considered individually or in combination, met or equaled a Listing.  (Doc. 10-2 at 25).  Specifically, the ALJ considered 1.15 (Disorders of the Skeletal Spine Resulting in Compromise of a Nerve Root), 1.16 (Lumbar Spinal Stenosis resulting in a compromise of the cauda equina), 1.18 (Abnormality of a Major Joint(s) in Any Extremity), 12.03 (Schizophrenia Spectrum and Other Psychotic Disorders), 12.04 (Depressive, Bipolar and Related Disorders), and 12.06 (Anxiety and Obsessive-Compulsive Disorders).  (Doc. 10-2 at 25).

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the medical evidence provided.  The ALJ determined that Mr. G. has the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, or crawl. He must avoid concentrated levels of temperature extremes, humidity, vibration, and hazards, defined as heights. He is

6

> limited to unskilled work activity as defined in the Dictionary of Occupational Titles (DOT), which is limited to simple routine repetitive tasks, that is low stress defined as only occasional decision making required and only occasional changes in the work setting. He can have no interaction with the public but could have occasional interaction with coworkers and supervisors.

(Doc. 10-2 at 28).

Having assessed a claimant's RFC, at step four the ALJ must determine whether the claimant has the RFC to perform the requirements of their past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  Past relevant work is defined as work the claimant has done within the past five years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it.  20 C.F.R. §§ 404.1560(b); 416.960(b).  If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step.  The ALJ determined Mr. G. is unable to perform any past relevant work.  (Doc. 10-2 at 35).  Mr. G. has past

relevant work that includes working as a forklift operator, but the exertional demands exceed his limitations. (*Id.*).

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).

The ALJ determined that Mr. G. was 26 years old on the alleged onset date, defined as a younger individual age 18-49 by the Regulations. 20 C.F.R. §§ 404.1563; 416.963. (Doc. 10-2 at 35). The ALJ also noted that Mr. G. "has a limited education" as considered in 20 C.F.R. §§ 404.1564; 416.964. (*Id.*). The ALJ determined that upon consideration Mr. G.'s age, education, work experience, and RFC "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Doc. 10-2 at 35). The ALJ specifically identified occupations of folder, marker, and sorter. (Doc. 10-2 at 36).

As a result of this analysis, the ALJ determined that Mr. G. was not disabled and denied his applications for benefits.  (*Id*. at 36-37).

## III.   Standard of Review

In order to receive benefits under Title II and Title XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).  Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits.  42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential

evaluation process.  20 C.F.R. § 404.1520(a).  Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(a).

The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work.  20 C.F.R. § 404.1512(a).  Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience.  20 C.F.R. § 404.1512(b)(3).

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). If the factual findings of the Commissioner are supported by substantial evidence and decided according to correct legal standards, a court will be bound by those findings. *Joshua L. v. Colvin*, No. 23-CV-4528, 2024 WL 5170747, at *7 (E.D. Pa. Dec. 19, 2024). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064

(3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether Mr. G. is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca v. Astrue*, 901 F. Supp. 2d

12

533, 536 (M.D. Pa. 2012) ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

## IV.  Discussion

Plaintiff asserts four arguments as to why the ALJ's decision should be vacated and remanded.  (Doc. 11 at 7).  First, he argues that the ALJ erroneously rejected the opinions of the state agency consulting psychologists that Plaintiff is limited to one-to-two step tasks.  Second, he claims that the ALJ failed to discuss or consider the adjective "short" contained within an expert opinion, arguing that the difference between "simple instructions" and "short, simple instructions" is significant. Third, the ALJ erroneously relied upon Plaintiff's activities of daily living to reject the uncontroverted opinions of the state agency consulting psychologists.  Finally, Plaintiff argues that the ALJ failed to account for any unscheduled absences within the residual functional capacity assessment where such a limitation was uncontroverted.  We will begin by addressing Plaintiff's first claim regarding the ALJ's rejection of a one-to-two-step task limitation.

### A. The ALJ's Rejection of a One-to-Two Step Task Limitation

Plaintiff argues that the ALJ rejected the opinion of both state agency consultants that he is limited to one-to-two step tasks.[5]  (Doc. 11 at 7-13).  Plaintiff maintains that in rejecting the uncontroverted medical opinions, the ALJ crafted an RFC that exceeds all medical opinions of record.  (*Id.* at 9)

The Commissioner responds by asserting that substantial evidence supports the ALJ's mental RFC finding.  (Doc. 17 at 10).  The Commissioner argues that the ALJ adequately explained the rationale for Plaintiff's mental RFC, noting that the ALJ expressly found that she was not persuaded by the portions of the opinions of Dr. Vigna and Dr. Plowman that limited Plaintiff to one-to-two or one-to-three step limitations.  (*Id.* at 12).

Plaintiff replies that the Commissioner failed to address his argument, the opinions of Dr. Vigna and Dr. Plowman are

---

[5] Plaintiff acknowledges that one of the State agency psychological consultants opined in one section of the opinion that Plaintiff can carry out one-to-two step instructions but opined in a later section that he can carry out one-to-three step instructions.  (Doc. 11 at 6, n.1).  However, Plaintiff maintains that "this difference is inconsequential."  (*Id.*).

uncontroverted, and no medical opinion of record supports a greater level of functioning.  (Doc. 18 at 2).  In the absence of a medical opinion supporting a greater level of functioning, the ALJ's rejection of these opinions cannot be supported by substantial evidence.  (*Id.*).

It is well settled that the ALJ may not simply substitute "her own credibility judgments, speculation or lay opinion," for the opinions of medical sources.  *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).  In *Whitney v. Bisignano*, 4:24-CV-1950, 2026 WL522922 (M.D. Pa. Feb. 25, 2026), the Court confronted a similar issue.  There, the only two sources to opine on the plaintiff's mental impairments both included a limitation to one-to-two step tasks.  *Id.* at *2-3.  The Court noted that "[b]ased upon the ALJ's own interpretation of the record, he concluded that a one-to-two step task limitation was inconsistent with the objective findings, treatment history, and activities of daily living, but the balance of the opinions of these experts were entirely consistent with these records."  *Id.* at *4.  The Court determined that the ALJ's rejection of a medical consensus that the plaintiff would be limited to one-to-two step tasks based upon his own lay interpretation of the evidence was improper.  *Id.* at *10.  The Court explained that the ALJ's

15

decision to reject both medical opinions in favor of his own view of the

evidence was particularly problematic as:

> In following this course and effectively
> discounting *all* medical opinions, the ALJ gave
> insufficient credence to the concept that '[r]arely
> can a decision be made regarding a claimant's
> residual functional capacity without an
> assessment from a physician regarding the
> functional abilities of the claimant.'

(*Id.*) (quoting *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 398 (M.D. Pa.

2019) (citing *Biller v. Acting Comm'r of Soc. Sec.*, 962 F. Supp. 2d 761,

778–79 (W.D. Pa. 2013) (internal quotation omitted)).

Here, too, only two medical opinions commented upon Plaintiff's

mental RFC.  State agency psychological consultant John Robert Vigna,

Psy.D. completed a Psychiatric Review Technique and Mental Residual

Functional Capacity Assessment on November 1, 2021 and State agency

psychological consultant Karen Louise Plowman, Psy.D. completed a

Psychiatric Review Technique and Mental Residual Functional

Capacity Assessment on May 13, 2022.  (Doc. 10-2 at 32).

Dr. Vigna opined, in relevant part, that:

> The claimant's ability to understand, remember
> and carry out complex or detailed instructions is
> limited, however, the claimant would be expected
> to understand and remember at least simple, one

16

> and two-step instructions . . .  Due to the ability
> to understand and remember one to three-step
> instructions, the claimant is able to perform
> simple, routine tasks in a stable environment.

(Doc. 10-3 at 42).  Dr. Plowman similarly opined that "[t]he claimant's ability to understand, remember and carry out complex or detailed instructions is limited, however, the claimant would be expected to understand and remember at least simple, one and two-step instructions."  (Doc. 10-3 at 65).  There are no medical opinions that suggest that Mr. G. is capable of carrying out more than one-to-two step or one-to-three step tasks.

The ALJ summarized Dr. Vigna's opinion, including noting that Dr. Vigna stated that "due to his ability to understand and remember one to three step instructions, he could perform simple, routine tasks in a routine and stable environment."  (Doc. 10-2 at 32).  The ALJ then noted that he found Dr. Vigna's opinion "partially persuasive."  (Doc. 10-2 at 32).  The ALJ stated, "The mild limitations in understanding, remembering, or applying information are not supported by or consistent with the record as a whole, and are not persuasive.  The later opinion of Dr. Plowman regarding understanding, remembering, or

applying information is more consistent with the record and the

undersigned finds it more persuasive." (*Id.*).

The ALJ then similarly summarized Dr. Plowman's findings,

including noting that Dr. Plowman found that Plaintiff could "perform

simple, one to two step tasks on a sustained basis on a sustained basis

despite the limitations associated with his impairments." (*Id.* at 32-33).

The ALJ then stated:

> The undersigned finds the opinion of Dr.
> Plowman somewhat persuasive. The psychiatric
> review technique findings and simple routine
> tasks with social limitations were and remain
> well supported and consistent with the
> longitudinal evidence and are found to be
> persuasive. The limitations to 1 to 3 step tasks,
> however, are not set forth with medically
> acceptable signs and laboratory findings. The
> longitudinal evidence does not establish any
> support for significant task limitation with the
> claimant's mental status findings consistently
> being reported as normal with some variations in
> mood (Exhibits C9F, C12F, C15F, and C16F).
> Additionally, the claimant testified he can
> perform a wide variety of tasks including
> personal care, chores, taking care of his three
> children and "school stuff", playing guitar,
> watching television, reading nonfiction
> autobiographies, shopping (although
> infrequently), and getting along with his wife and
> children pretty well, although he does not like to
> associate with people. He gets sleep, takes
> medical marijuana and Latuda, and engages in

routine and conservative care. None of this supports the level of limitations contemplated by Dr. Plowman or Dr. Vigna regarding 1 to 2 or 1 to 3 step tasks. As such, these portions of both opinions are not persuasive. A limitation to 1 to 3 steps contemplates significant limitations which is not supported by the longitudinal objective mental status, psychological or psychiatric findings reported in the record. As noted above the claimant's objective mental status findings are normal with some variation in mood and neither doctor sets forth any signs or laboratory findings to support this level of limitations. Therefore, this portion of the opinions is clearly not well supported or consistent with the evidence of record, including the claimant's own testimony and these portions are not severe.

(Doc. 10-2 at 33).

The ALJ's rationale for rejecting the consensus opinion of the two medical providers that opined that Plaintiff is limited to one-to-two or one-to-three[6] step tasks reveals that she improperly substituted "her own credibility judgments, speculation or lay opinion," for the opinions of those medical sources. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir.

---

[6] We also take note of the discrepancy in Dr. Vigna's opinion, which includes both a limitation to one-to-two step tasks and a limitation to one-to-three step tasks. (Doc. 10-3 at 42). To the extent such a discrepancy is material, on remand, we remind the ALJ of the duty to further develop the record where the records at issue contain a conflict or ambiguity that must be resolved. *See Smith v. Astrue*, 961 F. Supp. 2d 620, 645 (D. Del. 2013).

2000). As the Court noted in *Whitney*, "it is axiomatic that an ALJ errs in relying upon his own lay opinion to reject clinically supported medical source opinions." 2026 WL522922, at *10 (citing *See Cordero v. Kijakazi*, 597 F. Supp. 3d 776, 806 (E.D. Pa. 2022)). Based upon this error, we cannot say that the ALJ's decision was supported by substantial evidence.

We further note that this error was not harmless. The *Dictionary of Occupational Titles* ("DOT") describes the general educational development of each occupation. *Shipman*, 2023 WL 5599607, at *9. "General educational development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." *Id.* (citing DOT, Appendix C, 1991 WL 688702). The GED scale is composed of three divisions, but only one is relevant here—reasoning development. *Id.* (citing DOT, Appendix C, 1991 WL 688702). In occupations with a reasoning development level of 1, satisfactory job performance requires that an employee be able to "[a]pply commonsense understanding to carry out simple one-or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.*

(citing DOT, Appendix C, 1991 WL 688702).  In occupations with a reasoning development level of 2, satisfactory job performance requires that an employee be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations." *Id.* (citing DOT, Appendix C, 1991 WL 688702).

The plain language of the DOT definition for GED Reasoning Development Level 1 suggests there is no conflict between it and a limitation to no more than one-to-two step tasks.  *Id.*  Accordingly, courts have found that a limitation to one-to two-step tasks is consistent with GED Reasoning Development Level 1, but *inconsistent* with GED Reasoning Development Level 2 and 3.  *Id.* at *10 (quoting *Ferrebee v. Kijakazi* No. 3:20-CV-02188, 2022 WL 905153, at *4 (M.D. Pa. Mar. 28, 2022) (collecting cases).  Because GED Reasoning Level of 2 or 3 may conflict with a limitation of one-to-two step tasks, courts typically remand where there is a conflict involving a limitation to one-to-two step tasks and the only occupations cited by a vocational expert and ALJ contain a GED Reasoning Development Level 2 or greater.  *Id.*

(Error was not harmless and required remand where occupations listed by vocational expert and adopted by ALJ had GED Reasoning Development Levels of 2 or greater).

On the other hand, where the vocational expert identified at least one job with a GED Reasoning Development Level of 1, an error relating to a one-to-two step task limitation has been deemed harmless with no need for remand. *See, e.g., Soto v. Kijakazi*, No. 4:21-CV-1531, 2022 WL 4358087, at *11 (M.D. Pa. Sept. 20, 2022) (error was harmless and no remand required where claimant with one-to-two step task limitation would still be able to perform one of jobs identified by vocational expert with GED Reasoning Development Level of 1).

Here, the vocational expert indicated that Mr. G. could perform the jobs of folder, marker, and sorter, which have reasoning levels of 2 or 3.[7]  Because there are no positions identified by the vocational expert

---

[7] The ALJ identified the representative jobs of folder, DOT 369.687-018, marker, DOT 209.587-034, and sorter, DOT 209.687-026. (Doc. 10-2 at 36).  Pursuant to the Dictionary of Occupational Titles, folder and marker have a reasoning level of 2 and sorter has a reasoning level of 3.  (*See* https://occupationalinfo.org/36/369687018.html; https://occupationalinfo.org/20/209587034.html; and https://occupationalinfo.org/20/209687026.html, (last visited July 22, 2026).

with a GED Reasoning Development Level of 1, the ALJ's rejection of the limitation of one-to-two or one-to-three step tasks is not harmless error. Therefore, remand is required to properly consider Dr. Vigna and Dr. Plowman's identified one-to-two or three step task limitation.

## V. Conclusion

Based on the foregoing and pursuant to sentence four of 42 U.S.C. § 405(g) the Commissioner's decision to deny Mr. G. disability benefits is **VACATED** and the case is **REMANDED** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence. The Clerk of Court is directed to **CLOSE** this case.

Dated: July 27 2026          **/s/ Leo A. Latella**
                                       Leo A. Latella
                                       United States Magistrate Judge